**John R. BOLEY, et al., Plaintiffs**

v.

**PINELOCH ASSOCIATES, LTD., et al., Defendants.**

**No. 87 Civ. 5124 (JMW).**

United States District Court, S.D. New York.

July 15, 1988.

674

Steven J. Toll, Cohen, Milstein & Hausfeld, Washington, D.C., for plaintiffs.

Martha R. Overall, Orrick, Herrington & Sutcliffe, New York City, for PaineWebber.

David A. Stein, Stroock & Stroock & Lavan, New York City, for Cornerstone defendants.

Charles J. Moxley, Jr., Jones Hirsch Connors & Bull, New York City, for Borod.

Shephard Lane, New York City, for Pinelock Associates, Ltd. and Ivor B. Clark.

## MEMORANDUM AND ORDER

WALKER, District Judge:

### I.  INTRODUCTION

This matter is currently before the Court on defendants' motions to dismiss the amended complaint under Fed.R.Civ.P. 9(b) and 12(b)(6).  The action involves allegations of fraud in the solicitation of investors in a real estate partnership.  For the reasons stated below, the Court grants the motions in part and denies them in part.

Plaintiffs are investors in limited partnership interests relating to the construction and maintenance of an apartment complex in Texas. The amended complaint alleges seven counts: (1) violations of § 12(2) of the Securities Act of 1933 (the "Act"), (2) violations of § 17(a)(2) and (3) of the Act, (3) violations of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b–5 promulgated thereunder, (4) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), (5) breach of common law fiduciary duty, (6) common law fraud and deceit, and (7) negligence and negligent misrepresentation.

Among the defendants named, PaineWebber Inc. ("PaineWebber"), Borod & Company ("Borod") and Cornerstone Investors, Inc., CCL–Associates Limited Partnership, CCL–Cornerstone, Inc., Cornerstone Capital Limited, Peter H. Leach and Stephen C. Kratovil (collectively referred to as "Cornerstone Defendants") move to dismiss the claims against them asserting that (1) the § 12 claim is barred by the applicable statute of limitations; (2) there is no private right of action under § 17(a) of the Act; (3) the requirements of Fed.R.Civ.P. 9(b) are not met with respect to those claims of the amended complaint alleging fraud; (4) the 10(b), 10b–5, RICO, and aider/abettor claims fail to state causes of action; (5) the state law claims should be dismissed under *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); and (6) the elements establishing a fiduciary relationship have not been pleaded.[1]

## II. BACKGROUND

For the purposes of this motion, the Court, as it must, assumes the facts to be as alleged in the amended complaint. The plaintiffs are purchasers of 28½ limited partnership units in Pineloch, Ltd. ("Pineloch"). Defendants Ivor B. Clark ("Clark") and John J. Moran ("Moran") formed Pineloch, and were the general partners of Pi-

neloch Associates, Ltd. ("Pineloch Associates"), which served as the general partner of Pineloch. In December 1983, Pineloch purchased undeveloped land in Harris County, Texas on which it planned to construct, own, operate, and hold for investment a 440 unit apartment building (the "Project"). Clark and Moran also arranged for Pineloch to obtain a $13,900,000 construction loan and contracted for construction of the building, which commenced in January 1984.

Sometime in mid–1984, Clark and Moran obtained a commitment for permanent mortgage financing of the $13,900,000 loan from California Federal Mortgage Company, which was subsequently assigned to California Federal Savings & Loan Association ("Cal Fed"). Under the terms of this commitment, the construction loan would not close or be funded unless 75 percent of the apartment units were leased and the borrower provided a letter of credit or certificate of deposit equal to 150 percent of the projected cash flow for one year. Aware of these terms, Clark and Moran began to lease the units prior to completion of the building with the aid of substantial discounts to achieve the required 75 percent occupancy rate.

On or about September 28, 1984, Cal Fed entered into the $13,900,000 loan with Pineloch even though the project had not been 75 percent leased and the appropriate letter of credit or certificate of deposit had not been provided. Not only was the project unable to maintain the 88 percent occupancy levels necessary to make the mortgage payments and pay the operating expenses, but the average rental rate after the discounts given to lure lessees was $.44 per square foot instead of the average rate of $.68 projected. In addition, proceeds from the sale of limited partnership units were largely used to pay fees to the various defendants. Consequently, Pineloch was unable to make its mortgage payments. Cal Fed sent a notice of default to the

1. Only PaineWebber makes any substantive arguments concerning the aider/abettor liability claims in the amended complaint and the claim pleading that defendants breached their fiduciary duties to plaintiffs. Accordingly, the Court will examine the sufficiency of these claims solely as they pertain to PaineWebber.

General Partners sometime in mid–1986, and on October 6, 1986, Pineloch filed for voluntary protection under Chapter 11 of the U.S. Bankruptcy Code.

## III. DISCUSSION

The amended complaint alleges that on or about August 1984, all the defendants participated in the preparation of the Placement Memorandum and/or other written and oral solicitations concerning the Project. PaineWebber, acting as the broker for the Pineloch shares, allegedly contacted numerous plaintiffs and induced them to purchase the partnership units. Borod & Co. ("Borod"), acting as certified public accountants for Pineloch and the general partners, allegedly prepared a document entitled "Projections of Tax and Economic Consequences" ("Economic Projections") which was included within the Placement Memorandum. The Cornerstone defendants, acting as the placement agent, administrative service entity of Pineloch, and administrative general partner of Pineloch allegedly reviewed the accuracy of the statements made in the Placement Memorandum regarding Pineloch and the financial viability of Clark and Moran.

According to the amended complaint, the Placement Memorandum contained numerous misrepresentations and omissions of material facts. For example, the Economic Projections allegedly overestimated the 1986 occupancy levels, rent levels, and income. Amended Complaint at ¶ 46. Plaintiffs contend that these projections were materially misleading, inaccurate and false and prepared without reasonable basis in fact. Plaintiffs contend that they relied on the Placement Memorandum and the oral representations in making their decision to invest. The amended complaint further argues that the proceeds from the sale of the partnership units were improperly used to pay certain fees to several of the defendants. It is the contention of plaintiffs that

Pineloch was unable to sustain operations or repay the loan as a direct result of the misrepresentations, omissions, and fees paid to defendants.

### A. § 12(2) Claims

The first count of the amended complaint alleges violations of § 12(2) of the Act. The defendants move to dismiss this claim on the ground that § 13 of the Act, 15 U.S.C. § 77m, renders the claim time barred.[2] For the reasons stated below, the Court grants defendants' motion.

This action was commenced on July 17, 1987. Under § 13, the plaintiffs claims would be untimely unless they can show that they did not and could not have discovered the existence of the untrue statements or omissions prior to July 17, 1986. Defendants urge dismissal of the § 12(2) claims on the grounds that (a) plaintiffs did not properly plead the requisites of § 13 in their amended complaint, and (b) plaintiffs were on inquiry notice prior to July 17, 1986. The Court need only address the former contention.

When an action is commenced more than one year after the allegedly fraudulent behavior, a complaint must, to be considered timely, state (1) the time and circumstances of the discovery of the fraudulent statement, (2) the reasons why it was not discovered earlier if more than one year has elapsed since the fraudulent conduct occurred, and (3) the diligent efforts which plaintiffs undertook in making or seeking such discovery. *Krome v. Merrill Lynch & Co., Inc.*, 637 F.Supp. 910, 914 (S.D.N.Y. 1986); *Quantum Overseas, N.V. v. Touche Ross & Co.*, 663 F.Supp. 658, 662 (S.D.N.Y. 1987). In this case, plaintiffs do not allege the details of their discovery of the alleged fraud or of their efforts to discover the fraud. Arguing that this failure is fatal to the plaintiffs' claim, defendants maintain that the § 12(2) claims should be dismissed.

---

**2.** § 13 provides:

No action shall be maintained to enforce liability created under section ... 77l(2) of this title unless brought within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any action be brought ... more than three years after the sale.

15 U.S.C. § 77m.

Although the amended complaint is not properly pleaded under *Krome*, plaintiffs allege that "because of the continuing concealment and withholding of material information relating to Pineloch by defendants, [they] could not have been aware of the misstatements and omissions of fact until sometime after October 1986." Amended Complaint at ¶ 33. Plaintiffs rely on the holding in *In re Gas Reclamation, Inc. Securities Litigation*, 659 F.Supp. 493, 508 (S.D.N.Y.1987), where Judge Sand held that plaintiffs' specific allegations that defendants concealed the fraud overcame the deficiencies in meeting the pleading requirements outlined in *Krome*. However, in this case, plaintiffs' amended complaint fails to allege concealment with specificity, thereby distinguishing this case from *Gas Reclamation*.

■ Plaintiffs allege that defendants concealed and withheld material information relating to Pineloch solely by not transmitting Cal Fed's notice of default to the plaintiffs. Amended Complaint at ¶¶ 33, 73. Plaintiffs then allege that they did not learn of this default until October 6, 1986 when Pineloch filed for relief under Chapter 11. Amended Complaint at ¶ 74. Such allegations utterly fail to substantiate a claim of concealment. Plaintiffs do not even allege that they were entitled to receive notice of the default. Without further support of their claim of concealment, the Court cannot allow this claim to go forward.[3]

### B. Section 17(a) Claims

■ The second count of the amended complaint alleges violations of §§ 17(a)(2) and (3) of the Act, 15 U.S.C. § 77q. The moving defendants seek dismissal of this claim on the ground that there is no private right of action under § 17(a). Because the

Court agrees, count two of the amended complaint is dismissed.

The Second Circuit recognized a private right of action under § 17(a) in *Kirshner v. United States*, 603 F.2d 234, 241 (2d Cir. 1978), *cert. denied* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979). Since that time, however, the continuing validity of that holding has been seriously eroded. Justice Friendly noted that *Kirshner* "may be open to reexamination" as a result of criticism of the analysis in that case as well as later Supreme Court decisions. *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 559 n. 3 (2d Cir.1985). Indeed, several courts in the Southern District have held that no private right of action exists under § 17(a). *See, e.g., Anderson v. Lowrey*, 667 F.Supp. 105, 110 (S.D.N.Y.1987); *Kaufman v. Amtax Planning Corp.*, 669 F.Supp. 573, 576 (S.D.N.Y. 1986); *Ackerman v. Clinical Data, Inc.*, [1985–1986 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 92,207 (S.D.N.Y.1985) [1985 WL 1884].[4]

Although plaintiffs argue that there is an implied cause of action under §§ 17(a)(2) and (3), they rely heavily on the decision in *Kirshner* to support their position. However, as discussed above, it is no longer clear that *Kirshner* was the last word on this issue in this circuit. A private right of action exists under § 17(a) of the Act only if the requirements enumerated in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and its progeny are met. Plaintiffs have not even attempted to argue that § 17(a) meets those requirements. Judge Haight in *Ackerman*, however, performed precisely this examination in great detail and concluded that there is no private right of action. The Court need not repeat that analysis here. Rather, it is sufficient to note that this Court agrees with the rea-

---

**3.** Because the Court has dismissed the § 12(2) claims, it need not address the issue of inquiry notice. The Court does note, however, that if defendants' contention that plaintiffs received continuous reports on Pineloch's financial performance, occupancy rate and rent levels proves correct, plaintiffs would appear to be hard pressed to sustain this claim.

**4.** Plaintiff is correct that not every court in this district that has considered this issue since *Kirshner* has ignored the holding therein. *See, e.g., Krome v. Merrill Lynch & Co.*, 637 F.Supp. 910, 916 n. 3 (S.D.N.Y.1986); *Savino v. E.F. Hutton & Co., Inc.*, 507 F.Supp. 1225, 1231 n. 4 (S.D.N.Y.1981). Nevertheless, the Court still concludes for the reasons discussed below that there is no private right of action under § 17(a).

soning in *Ackerman*. Accordingly, the plaintiffs' §§ 17(a)(2) and (3) claims are dismissed.

### C. The Remaining Claims Sounding in Fraud[5]

#### 1. Rule 9(b)

Counts three and four of the amended complaint plead causes of action sounding in fraud. To plead successfully a claim in fraud, a complaint must satisfy the requirements of Fed.R.Civ.P. 9(b) that "the circumstances constituting fraud or mistake ... be stated with particularity." This rule serves three important purposes in securities fraud cases: first, it guarantees that a defendant will be informed of the actions upon which the allegations of fraud are based; second, it acts to protect a defendant's reputation by preventing a plaintiff from baldly alleging fraud; and third, it prevents strike suits. *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987); *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

■ The moving defendants contend that the amended complaint fails to allege fraud with sufficient specificity to survive a motion to dismiss under Rule 9(b). After examining the amended complaint's allegations with respect to the moving defendants, the Court concludes that the amended complaint fails to satisfy the requirements of Rule 9(b) as to all moving defendants.[6]

Allegations of fraudulent misrepresentations must state the content of the statement as well as the time, place, and speaker for each statement. *DiVittorio*, 822 F.2d at 1247; *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986). With respect to PaineWebber, the amended complaint alleges

that brokers employed by PaineWebber made fraudulent oral representations concerning the financial benefits and gains to be derived from investment in limited partnership shares. Amended Complaint at ¶¶ 34, 36. These allegations totally fail to satisfy the requirements of Rule 9(b). No time, place or speaker is alleged for any of these supposedly fraudulent oral statements. Accordingly, these alleged oral statements cannot form the basis of any claim based on fraud.

The amended complaint further alleges fraudulent acts by PaineWebber as a result of its alleged participation in the preparation of the Placement Memorandum. Nevertheless, these allegations also fail to meet the requirements of Rule 9(b) because they are made solely on information and belief. Pleadings can be made on information and belief only where "matters are peculiarly within the adverse party's knowledge," and must be "accompanied by a statement of facts upon which the belief is founded." *Klein v. Computer Devices, Inc.*, 591 F.Supp. 270, 279 n. 24 (S.D.N.Y. 1984); *DiVittorio*, 822 F.2d at 1247; *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972).

The amended complaint provides no basis for the allegation that PaineWebber played a role in the preparation of the Placement Memorandum. Amended Complaint at ¶¶ 51, 77. Moreover, PaineWebber is not an insider or an affiliate; thus, some basis for its alleged role must be stated. *See Luce*, 802 F.2d at 55. Accordingly, the counts sounding in fraud against PaineWebber are dismissed for failure to comply with Fed.R.Civ.P. 9(b).

■ The pleadings in the amended complaint are even more deficient with respect to the Cornerstone defendants. The sole paragraph which alleges wrongdoing on

---

5. The moving defendants have asked the Court to examine the Placement Memorandum in ruling on these motions. Such examination has not proven necessary given the Court's rulings on the motions. However, the Court is mindful that plaintiffs face a difficult task in proving reliance when disclaimers and warnings are allegedly placed throughout offering materials. *Luce*, 802 F.2d at 56.

6. At the outset, the Court notes that the amended complaint attempts to include all of the defendants in certain allegations by merely alleging that "defendants" committed certain acts. Amended Complaint at ¶¶ 21, 33, 38. These allegations obviously fail to link specific defendants to specific acts as required by Rule 9(b). *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987).

their part is paragraph 51 which, as already stated, is based upon information and belief. Once again, there is no statement explaining the basis for plaintiffs' allegations. The Cornerstone defendants may indeed be insiders or affiliates given their various roles as agents to Pineloch, but the amended complaint fails to allege such status or provide enough information to the Court concerning their roles to satisfy Rule 9(b). Accordingly, the Court dismisses the fraud claims against the Cornerstone defendants.

■ The amended complaint also does not satisfy the requirements of Fed.R.Civ. P. 9(b) with respect to Borod. Plaintiffs do successfully identify the source of Borod's allegedly fraudulent activity. In paragraph 35 of the amended complaint, plaintiffs allege that Borod drafted a document which was included in the Placement Memorandum. It is the clear law of this circuit that reference to offering materials written by a defendant satisfies the requirement of 9(b). *Luce,* 802 F.2d at 55. Nevertheless, plaintiffs have failed to plead fraudulent intent with the required specificity. Although Rule 9(b) permits state of mind to be pleaded generally, the Second Circuit has held that some basis for fraudulent intent must be alleged. *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *cert. denied* — U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988) ("These factual allegations must give rise to a 'strong inference' that the defendants possessed the requisite fraudulent intent."); *Devaney v. Chester,* 813 F.2d 566, 568 (2d Cir.1987) ("Although Rule 9(b) permits knowledge to be averred generally, plaintiffs must still plead the events which they claim give rise to an inference of knowledge."); *Connecticut National Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987); *Quantum Overseas, N.V. v. Touche Ross & Co.,* 663 F.Supp. 658, 668 (S.D.N.Y.1987).

Plaintiffs have failed to suggest any factual basis for their allegation that Borod had knowledge of the putative fraud or was reckless in its behavior. There are no facts suggesting a motive for Borod's behavior since, unlike other defendants, Borod was not entitled to allegedly excessive fees. In addition, there is a dearth of facts suggesting "conscious behavior" by Borod. *Beck,* 820 F.2d at 50. Rather, the amended complaint alleges that Borod (1) prepared a document entitled "Projections of Tax and Economic Consequences"; (2) did not independently audit or review the projections given it by the Pineloch; and (3) that Borod had a duty to make such review. Consequently, according to the amended complaint, Borod knew, was reckless in not knowing, or should have known that the economic projections were unreasonable. Amended Complaint at ¶ 35. The amended complaint also alleges that the projections were inaccurate.

These claims do not support an allegation of fraud against Borod. Plaintiffs' allegations appear more like claims supporting a breach of fiduciary duty action, rather than a claim under the federal securities acts. In addition, plaintiffs knew based on disclosures in the Economic Projections that Borod had not conducted an independent review; thus, it is unclear to the Court how such an allegation can properly plead fraud. In their opposing papers, plaintiffs merely urge, without any relevant support,[7] that Borod had a duty to review the underlying data, notwithstanding Borod's clear statement that it had not conducted such a review. How such an allegation supports an inference of fraudulent intent is never made clear. Finally, it is settled law that error in making projections does not, standing on its own, support an allegation of fraud. *Quantum Overseas, N.V.,* 663 F.Supp. at 668. Once again, the basis for believing that the defendant knew the projections to be inaccurate must be stated. *Devaney,* 813 F.2d at 568.

---

**7.** The sole case plaintiffs cite in opposing this aspect of the motion to dismiss is *Fund of Funds, Ltd., F.O.F. v. Arthur Andersen & Co.,* 545 F.Supp. 1314, 1353 (S.D.N.Y.1982). In that case,

however, the Court was addressing the issue of reliance, not whether an adequate foundation had been alleged to support the allegation of knowledge or recklessness.

Simply put, the allegations in the amended complaint do not support an inference of fraud or even any indication why Borod would act recklessly.[8] Accordingly, the claims in the amended complaint alleging fraud against Borod are dismissed.[9]

### 2. RICO claims

Plaintiffs' amended complaint charges defendants with violations of 18 U.S.C. § 1962(a), (c) and (d). Defendants first contend that these RICO claims must be dismissed since plaintiffs have failed to plead the predicate acts of racketeering activity adequately. 18 U.S.C. § 1961(1)(D) defines "racketeering activity" to be "any offense involving fraud ... in the sale of securities." Plaintiffs seek to satisfy the requirement of pleading the predicate acts of "racketeering activity" by alleging that:

> Defendants knowingly and intentionally engaged in the actions as set forth above which resulted in repeated fraud in the sale of securities, thus constituting a pattern of racketeering activity within the meaning of RICO, 18 U.S.C. § 1961(1) and (5).

Amended Complaint at ¶ 88.

■ The securities fraud claims against the moving defendants have already been dismissed for the reasons discussed above. Accordingly, these same allegations cannot support the RICO claims as predicate acts. *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 18–9 (2d Cir.1983), *cert. denied* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *Mauriber v. Shearson/American Express, Inc.*, 546 F.Supp. 391, 397 (S.D.N.Y.1982). Thus, the RICO claim is dismissed as to all moving defendants.

### D. State Law Claims

■ Defendants claim that if the federal claims against them are dismissed, the Court should also dismiss the pendant state claims under *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The facts of this case suggest, however, that the pendant claims should not be dismissed at this stage of the litigation. The Court still has jurisdiction over the federal claims as it pertains to the non-moving defendants, specifically the § 10(b), 10b–5, and RICO claims. Even if plaintiffs decide not to replead the amended complaint or do so unsuccessfully, all three factors identified by the Supreme Court in *United Mine Workers* militate in favor of this Court addressing those claims.[10] For example, judicial economy will be furthered by this Court retaining jurisdiction since the facts underlying the state law claims are the same as those that support the federal claims against the non-moving defendants. In addition, the Court will need to address the state law claims as they pertain to the non-moving defendants. Consequently, the Court, exercising its discretion, does not dismiss the pendant claims *qua* pendant claims at this point in time. Thus, it is necessary to address the state law claims individually.

### 1. Breach of Fiduciary Duty

PaineWebber has moved to dismiss the fifth claim of the amended complaint, alleging breach of fiduciary duty, under Rule 12(b)(6). The Court grants the motion.

The existence of fiduciary duties depends

---

**8.** This case stands in sharp contrast to *Goldman v. Belden*, 754 F.2d 1059 (2d Cir.1985), which plaintiffs urge mandates that the Court not dismiss the claims here. In that case, however, the complaint specifically alleged facts which supported the allegation of defendants' knowledge. Here, there have been no such allegations.

**9.** Plaintiffs should be aware that because claims under § 10(b) and 10b–5 require proof of scienter, their claims against Borod thereunder are also inadequately pleaded. Under the law of this circuit, plaintiffs must "specifically plead those events which they assert give rise to a strong inference that the defendants had knowl-

edge of the facts [of the fraudulent activity or] ... recklessly disregarded their existence." *Ross v. A.H. Robins Co.*, 607 F.2d 545, 558 (2d Cir.1979), *cert. denied* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Roebuck v. Guttman*, 678 F.Supp. 68, 69 (S.D.N.Y.1988); *Modern Settings, Inc. v. Prudential–Bache Securities, Inc.*, 602 F.Supp. 511, 514 (S.D.N.Y.1984); *Decker v. Massey–Ferguson Ltd.*, 681 F.2d 111, 120–21 (2d Cir.1982).

**10.** The factors identified in *United Mine Workers* are "judicial economy, convenience and fairness to litigants." 383 U.S. at 726, 86 S.Ct. at 1139.

on the facts of a particular relationship.[11] Usually, therefore, a claim alleging the existence of a fiduciary duty is not subject to dismissal in a 12(b)(6) motion, given the generous pleading standard established in Fed.R.Civ.P. 8.

█ Nevertheless, in this case, plaintiffs have failed to allege anything more than one-time relationships between PaineWebber and plaintiffs. Allegations of reliance on another party with superior expertise, standing by themselves, will not suffice. *Mechigian v. Art Capital Corp.*, 612 F.Supp. 1421, 1431 (S.D.N.Y.1985). To plead a cause of action alleging that defendants became fiduciaries, plaintiffs must allege at least some of the factors from which a court could conclude that such a relationship has been established. Plaintiffs' amended complaint merely alleges that "[a]s a consequence of undertaking to act as a dealer-manager, promoters, sellers, accountants and bankers regarding the offering of Pineloch limited partnership interests, defendants entered into a fiduciary relationship of trust and confidence with plaintiffs." Amended Complaint ¶ 94. Such a conclusory allegation does not satisfy Rule 8. Accordingly, count five of the amended complaint is dismissed as to defendants PaineWebber.

### 2. Fraud [12]

Because the Court has already concluded that fraud has not been pleaded with sufficient particularity with respect to the moving defendants, the sixth count of the amended complaint is also dismissed as to them.

### 3. Negligence and Negligent Misrepresentation

Defendants fail to address this claim other than to argue that it should be dismissed under *United Mine Workers.* Because the Court has concluded not to dismiss the pendant claims, the seventh count of the amended complaint is not dismissed.

### E. Conclusion

Plaintiffs' second cause of action is dismissed with prejudice because there is no private right of action under §§ 17(a)(2) and (3) of the Act. In addition, the remainder of the amended complaint alleging federal actions against the moving defendants is dismissed without prejudice to replead. The sixth count of the amended complaint is also dismissed as to the moving defendants, and the fifth count is dismissed as to PaineWebber. Plaintiffs are granted twenty (20) days from the date hereof to replead the amended complaint to redress the deficiencies noted in this opinion.

SO ORDERED.

---

**11.** *Minpeco, S.A. v. Conticommodity Services, Inc.*, 552 F.Supp. 327, 331 (S.D.N.Y.1982) ("Whether the brokers owed a fiduciary duty to Minpeco depends on the facts of their relationship."); *Schenck v. Bear, Stearns & Co.*, 484 F.Supp. 937, 946–47 (S.D.N.Y.1979); *Congregation of the Passion, Holy Cross Province v. Kidder Peabody & Co.*, 800 F.2d 177, 182 (7th Cir. 1986) ("Under some circumstances, a broker or dealer will have a fiduciary duty to a particular customer. That duty, however, is not based merely on one's status as a dealer. *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 15 (2d Cir. 1983). A fiduciary relationship arises only when the dealings between the customer and the dealer presuppose a special trust or confidence. Whether or not a fiduciary relationship exists between the dealer and the customer is a question of fact.").

**12.** The complaint apparently attempts to plead aider and abettor liability against all defendants in counts three and six. Amended Complaint at ¶¶ 21, 83, 98. PaineWebber urges that these claims are deficient, and the Court agrees. An essential element of such liability is knowledge of the fraud by the primary wrongdoer. *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir.1983). The Court has concluded, however, that with respect to PaineWebber the allegations are pleaded without any supporting basis therefor.